IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSHUA MOSES HELLON,

    Petitioner,                                   No. CIV S-07-1816 LKK CHS P

    vs.

T. FELKER, Warden, et al.,

    Respondents.                  <u>FINDINGS AND RECOMMENDATIONS</u>

                                   /

## I.  INTRODUCTION

        Petitioner Joshua Moses Hellon is a state prisoner proceeding pro se with an amended petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254.  Petitioner stands convicted of various offenses following two separate jury trials in the Butte County Superior Court, for which he is currently serving consecutive life terms, each carrying the possibility of parole, with a total minimum term of 52 years to life.  In the pending petition, petitioner challenges the constitutionality of his convictions entered in case CM016216.

        Respondent filed a motion to dismiss, asserting that petitioner had not complied with the one-year statute of limitations set forth in 28 U.S.C. §2244(d).  Respondent's motion to dismiss was denied on April 2, 2009 and the matter is submitted for decision.

/////

## II. FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts were set forth on direct appeal in the unpublished opinion of the California Court of Appeal, Third District:

> A consensual search of the home of [petitioner's] girlfriend (the facts leading up to which we omit) in July 2001 led to the discovery of items in the garage that an Oroville police officer believed were associated with manufacturing methamphetamine. He alerted the county's inter-agency drug investigators. In their more extensive search of the home and garage, the investigators collected a large number of items that they believed "had significant evidentiary value showing that somebody had been manufacturing or attempting to manufacture methamphetamine and[/]or extracting pseudo [] ephedrine." Latent prints on several of these items matched [petitioner's]. In October 2001, detectives interviewed [petitioner], who admitted that he may have left fingerprints on items in his "old lady's" place, but [stated that] no one was manufacturing methamphetamine. He used muriatric acid only to extract gold from quartz, and a jar of ephedrine tablets was an herbal extract he used when exercising.

(C045511 (Lodged Doc. D) at 3-4.)

On January 8, 2002, the Butte County District Attorney filed an amended information in case CM016216, charging petitioner with manufacturing a controlled substance, i.e., methamphetamine (Cal. Health and Safety Code §11379.6(a) (count 1), and possession of a precursor with intent to manufacture methamphetamine (Cal. Health & Safety Code §11383(c)(1) (count 2). In addition, it was alleged for enhancement purposes that he had been previously convicted of two serious or violent felonies within the meaning of the three strikes law (Cal. Penal Code §§667(b)-(I), 11.70.12(a)-(d)) and that at the time of the commission of the current offense he had been released from custody on bail or on his own recognizance on three separate cases within the meaning of California Penal Code section 12022.1. (CT at 120-23.)

In the meantime, a jury was impaneled in another, unrelated Butte County criminal case, CM016207, and petitioner was found guilty as charged. (CT at 196.) Sentencing was continued pending resolution of other matters. (CT 209-210.)

/////

1      A different jury was impaneled on August 21, 2002 to try case CM016216, the case at issue here. (CT at 217.) On August 30, 2002, the jury found petitioner guilty of count two, possession of a precursor with intent to manufacture methamphetamine, but deadlocked on count one, the charge of manufacturing methamphetamine. Thereafter, the court declared a mistrial as to count 1 and later granted the People's motion to dismiss count 1. (CT at 235, 324-325, 332.) The special recidivist allegations regarding petitioner's prior serious or violent felonies and prior bail terms were found to be true. (CT at 235-236; 2RT at 363-65.)

     On November 19, 2003, the trial court granted the People's motion to strike one of the three bail enhancement allegations. (CT at 626; 1RT at 300-01; 2RT at 475-76.) On that same date, the court sentenced petitioner to an aggregate term of 52 years to life, comprised of one term of 25 years to life for count 2 in case CM016216, possession of a precursor with the intent to manufacture methamphetamine, plus 2 years for the remaining two bail enhancement allegations, in addition to another term of 25 years to life on the unrelated case, to be served consecutively. (CT at 626, 631-635.)

     On direct appeal, the California Court of Appeal, Third Appellate District, affirmed judgment, and the California Supreme Court denied review. (Lodged Docs. A-F.) Petitioner subsequently sought habeas corpus relief in the state courts, filing various petitions in the Butte County Superior Court, Third Appellate District Court, and California Supreme Court, all of which were denied. (Lodged Docs. E-L.) Petitioner has properly exhausted his state court remedies with respect to the claims set forth herein.

### III. PETITIONER'S CLAIMS

Petitioner claims that (A) insufficient evidence supported his conviction for possession of a precursor with intent to manufacture methamphetamine; (B) the prosecutor engaged in vindictive prosecution; and (C) he received ineffective assistance of counsel at trial and on appeal with respect to this conviction.

/////

IV. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

V. DISCUSSION

A. Sufficiency of the Evidence

On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). As stated by the United States Court of Appeals for the First Circuit, the focus under Jackson is not the correctness, but rather, the reasonableness of the state judgement. See Hurtado v. Tucker, 245 F.3d 7, 19 (1st Cir. 2001). The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Chein

4

v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).

Under this standard, "*all of the evidence* is to be considered in the light most favorable to the prosecution." Wright v. West, 505 U.S. 277, 296 (1992) (quoting Jackson, 443 U.S. at 319) (emphasis in original). The prosecution need not affirmatively rule out every hypothesis except that of guilt." Wright, 505 U.S. at 296. A reviewing court such as this one must presume- even if it does not affirmatively appear in the record- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id.

Petitioner's sufficiency of the evidence claim is somewhat confusing, however the crux of his argument is that the evidence, which included a partially empty bottle of ephedrine found along with other "household items," was legally insufficient to demonstrate the required specific intent for a conviction of possession of a precursor with the intent to manufacture methamphetamine.

At trial, the jury was properly instructed on the elements of the crime:

> Every person who, with the intent to manufacture methamphetamine, possesses ephedrine or pseudo ephedrine or a substance containing ephedrine or pseudo ephedrine, is guilty of a violation of Health and Safety Code 11383(c)(1), a crime.
>
> In order to prove this crime, each of the following elements mut be proved: One, a person possessed ephedrine or pseudo ephedrine or a substance containing ephedrine or pseudo ephedrine, and two, that person had the specific intent to manufacture methamphetamine.

(2RT at 296.) In addition, the trial court instructed the jury that

> [t]he specific intent with which an act was done may be shown by the circumstances surrounding the commission of the act. However, you may not find the Defendant guilty of the crimes charged in either Count I or II unless the proved circumstances are not only, number one, consistent with the theory that the defendant had the required specific intent, and two, that these circumstances cannot be reconciled with any other rational conclusion. Also, if the evidence as to any specific intent permit two reasonable interpretations, one of which points to the existence of the specific intent and the other to its absence, you must then adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the specific intent appears

5

|   |   |
|---|---|
| 1 | to you to be reasonable and the other interpretation to be unreasonable, then you must accept the reasonable and reject the unreasonable. |
| 2 |   |

(2RT at 287-88.)

   Petitioner argues that evidence was insufficient in this case specifically because (1) only some of the items that detectives initially believed to have been used in the processing of ephedrine tested consistently with that theory; (2) the various "household items" could have been used for other legitimate purposes; and (3) various other precursors used in the manufacture of methamphetamine (such as red phosphorous, iodine, or hydriotic acid) were not found in the home.

   Evidence presented at trial showed that on July 30, 2001, Oroville police officers conducted a consensual search of the home of petitioner's girlfriend. (2RT at 15-20.) Inside of an attached garage, they found a large glass bottle containing a bi-layered liquid, a can of Red Devil Lye, a can of Break Clean, a rubber glove with brown, yellow and red stains, tubing, and various containers with different colored liquids. (2RT at 17, 21, 32, 34, 40.) Once inside the home, police recovered a used glass methamphetamine pipe from a dresser drawer containing women's clothing. (2RT at 36-37, 42, 82.) In the kitchen, they found filter paper with clumps of red and brown substance, a glass container three-fourths full of an amber liquid, a pill bottle labeled ephedrine, a clear jar containing a black rock-like substance and some liquid, a bottle containing hydrogen peroxide, a plastic bottle with the word "acetone" hand written on it, and a photographic chemistry book. (2RT at 37-39, 42-44, 46, 82). Latent fingerprints were lifted from several of these items (2RT at 41-42, 77) and were later determined to belong to petitioner (2RT at 95-102).

   The prosecution offered two expert witnesses qualified to testify about the manufacture of methamphetamine. (2RT at 27-28, 118.) The experts described the various stages of methamphetamine manufacture and testified about the manner some of the items listed above are used in the manufacture of methamphetamine. (2RT at 28-33, 49-51119-124.) The

1  investigating detective from the drug task force, Detective Wiles, opined that someone had been
2  manufacturing methamphetamine or attempting to manufacture methamphetamine.  His opinion
3  was based, in part, on several of the household items found in the home, including the Red Devil
4  lye, can of Break Clean, bottle of ephedrine tablets, stained glove, open bottle of hydrogen
5  peroxide, and hand labeled bottle of acetone.  (2RT at 91-91.)

6          Criminalist Michi Lee also opined that these items had been used to manufacture
7  or in an attempt to manufacture methamphetamine.  Among the recovered items analyzed by
8  criminalist Michi Lee were a pile of stained papers, some filter papers, and paper towels.  (2RT
9  at 133.)  The stains on these papers tested positive for the presence of ephedrine and showed a
10 high acidic level.  (2RT at 131, 133, 146.)  A glass jar containing yellow liquid was analyzed and
11 hydrocchloric acid "was indicated to be present," but no controlled substances were detected.
12 (2RT at 131, 133, 139-40.)  A second glass jar containing yellow liquid was analyzed and found
13 to contain no controlled substances or precursors, but again a low level of hydrochloric acid was
14 indicated.  (2RT at 131, 143, 146.)  A glass jar containing reddish brown liquid was also
15 analyzed and found to contain ephedrine, be very acidic, and contain chloride ions, which
16 indicate the presence of hydrochloric acid.  (2Rt at 131, 140-43, 146.)  A tablet from the pill
17 bottle labeled "pure ephedrine alkaloid" was analyzed and confirmed to be ephedrine; the profile
18 of the tablet looked similar to the profile of the reddish brown liquid that was also tested.  (2RT
19 at 131, 143-44, 146, 271-72.)  Additional liquids found in the home were tested but found to
20 contain no controlled substances or precursors.  (2RT at 131, 144-46.)

21         Based on the analysis of the items seized, criminalist Michi opined that the state
22 of the filters, reddish-brown liquid, and ephedrine tablets were consistent with the prior
23 processing of ephedrine, which is the first stage of the methamphetamine manufacturing process.
24 (2RT at 146, 149-50.)  In forming her opinion, Lee relied on the test results of the filters and
25 reddish brown liquid, which showed the presence of ephedrine.  (2RT at 208-210.)  In addition,
26 the appearance of the filters was consistent with items found in other methamphetamine labs.

(2RT at 222, 227-28.) She believed that the other substances containing highly acidic liquids were also consistent with items commonly found in clandestine methamphetamine labs. (2RT at 221-222.)

The defense presented a forensic toxicologist who had re-tested (using a different method of preparation) the same samples tested by Michi. (2RT at 155-56, 261.) The defense's witness testified that, in contrast to the results of Michi's tests, his analyzation did not reveal the presence of ephedrine or psuedoephedrine on the stained filter papers and paper towels or in the glass jar containing the reddish brown liquid. (2RT at 156-159.) Michi testified in rebuttal that the differing results could be the result of the different methods of preparation used, specifically that the defense's expert had diluted the substances in too much methanol prior to being tested, and had also not used a large enough sample. (2RT at 261-70.)

A tape recording of Detective Wiles interviewing petitioner was played for the jury. (2RT at 52-54.) During the interview, petitioner admitted that he may have left fingerprints on household items in his girlfriend's home, but stated that no one was manufacturing methamphetamine. (CT ay P224-31.) He indicated that he used muriatric acid only to extract gold from quartz, and that he used the ephedrine extract as an herbal supplement when exercising. (CT at P224-31.)

Presuming, as this court must, that the trier of fact resolved any conflicts in the evidence in favor of the prosecution, it was reasonable for the jury to conclude that petitioner possessed ephedrine with the specific intent to manufacture methamphetamine. There was ample evidence of his guilt. A rational trier of fact could have concluded that the evidence could not be reconciled with any other rational conclusion, including petitioner's explanation that he was only extracting gold from quartz and taking ephedrine as an herbal supplement when exercising. Sufficient evidence supported petitioner's conviction for possession of a precursor with intent to manufacture methamphetamine, including the required element of specific intent.

/////

        B    Vindictive Prosecution.

Vindictive prosecution involves the government's attempt to punish a defendant for exercising a protected statutory or constitutional right. *See United States v. Goodwin*, 457 U.S. 368 (1982). It is well established that a prosecutor violates a criminal defendant's due process rights if he exacts a price for the defendant's exercise of a clearly established right or punishes him for doing what the law plainly entitles him to do. *See Id*. at 372; *Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974). "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citations omitted). To establish actual prosecutorial vindictiveness, a defendant must show, through objective evidence, that the prosecutor acted with genuine animus toward the defendant and that the defendant would not have been prosecuted but for that animus. *See Goodwin*, 457 U.S. at 380 n. 12. In order to make the required showing, a defendant must demonstrate that additional charges were brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion." *Id*.

If a defendant is unable to prove an improper motive with direct evidence, he may present circumstances from which an improper vindictive motive may be presumed. *Blackledge*, 417 U.S. at 27. However, to invoke such a presumption, the circumstances must "pose a realistic likelihood of 'vindictiveness.'" *Id*. A presumption of vindictiveness is rarely applied to a prosecutor's pretrial decisions because "a prosecutor should remain free before trial to exercise [that] broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Goodwin*, 457 U.S. at 382. Indeed, a prosecutor's charging decision is presumptively lawful. *See Bordenkircher*, 434 U.S. at 364; *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Accordingly, "a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than a pretrial decision." *Goodwin*,

457 U.S. at 381.  If a presumption of vindictiveness is established, the burden shifts to the government to present objective evidence justifying its conduct.  *Id*. at 374.

Here, petitioner challenges a pretrial change in the charging instrument.  Petitioner was initially charged with one "prior strike" allegation within the meaning of the California habitual criminals, or "three strikes" law.  *See* Cal. Penal Code §§667(b)-(I), 1170.12(a)-(d).  The prosecutor later amending the information to allege a second prior strike enhancement.  Petitioner claims that the amendment constituted vindictive prosecution because it was motivated either by his election to post and be released on bail and/or the fact that he was suspected for a time of killing someone while released on bail (an uncharged act which the District Attorney's office was aware of but ultimately did not pursue or prosecute).

Petitioner raised this issue in the trial court in a post-conviction motion.  At a hearing held on August 5, 2003, the prosecutor made an offer of proof on the record with respect to petitioner's allegations, indicating that the decision to amend the information to add the second strike allegation had nothing to do with petitioner's bail status or the fact that the District Attorney's Office briefly suspected him of being involved in other, uncharged criminal acts.  (2RT at 390-94.)  The prosecutor additionally stated that the failure to initially allege the second strike was inadvertent, and that the charging information was amended as soon as the oversight came to attention.  (2RT at 390-94.)

The trial court denied petitioner's claim of vindictive prosecution:

> Under the Three Strikes law the People have an obligation to plead and prove all known strikes.  You misinterpret my theory on that, Mr. Forland.  I'm not saying that [the District Attorney] had the legal obligation to plead and prove all known strikes.   Agreed, [the District Attorney] and the District Attorney's office in Butte County has and retains the discretion.  In my view under the Separation of Powers Doctrine, [the District Attorney] has retained the right to include or not to include strikes in filed cases and in the cour[se] of prosecuting cases.  You follow me so far?
>
> ...
>
> I'm saying there's statutory obligation.  I'm not saying the District

> Attorney has the obligation. It's a very subtle point and you'll understand when I go on.
>
> If there's a statutory obligation that states that the District Attorney must plead and prove all strikes and he does in his discretion decide to act consistently with their statutory obligation, this is not a case where he is required to act but where he does so, in my view as a matter of law it cannot be said any such action can even be construed as a vindictive prosecution where the District Attorney is simply choosing freely to live up to the obligation under the statute. Under the separation of powers he might have discretion not to do so. Where he chooses to do so that act may never be invoked as basis for vindictive prosecution as a matter of law. That's the Court['s] view in this case.
>
> I would go on to say further, even if this position is incorrect, as a matter of law based on the factual record in this case I see no factual evidence to support any argument of vindictive prosecution in this case. There seems to be no connection in terms of the policy of the District Attorney's office or their actions in this case that links up in any way any decisions made regarding prosecution in the suspected homicide and the decision to prosecute these felonies as three strikes cases. Lacking any evidence that there was even a hint of vindictive prosecution, I think that the motion must fail; for lack of factual support as well.
>
> So my ruling is twofold. First, I don't believe the motion can prevail as a matter of law because the People by adding the second strike are simply carrying out a statutory obligation and the decision to do so cannot be relied upon as a basis for a motion for vindictive prosecution. Secondly, more importantly, there's no factual basis in the record that would lend support for a finding of any vindictiveness whatsoever in the conduct of the District Attorney's office in this case, and for those two reasons, on both those bases, the motion to dismiss will be denied.

(2RT at 400-403.)

Petitioner has failed to demonstrate that the prosecutor's decision to amend the information with a second strike allegation was motivated by actual vindictiveness. Specifically, petitioner has failed to give any evidence other than speculation that the prosecutor amended the information solely to punish him for exercising his rights. Petitioner has also failed to make a showing sufficient to raise a presumption of vindictiveness or to overcome the presumption of prosecutorial regularity. First, the prosecutor's amendment was not a post-conviction action, but rather, a pretrial decision, which is presumptively lawful. *Bordenkircher*, 434 U.S. at 364. In

11

addition, the circumstances surrounding the amendment do not come close to posing a realistic likelihood of vindictiveness. Rather, the addition of those charges appears to have been a proper exercise of prosecutorial discretion. As the trial court observed, in enacting the three strikes law the California legislature directed that "the prosecution shall plead and prove all known prior felony convictions" and shall not enter into any agreement to strike or seek the dismissal of any prior felony conviction allegation unless there is insufficient evidence to prove the prior felony conviction. Cal. Penal Code §667(f)-(g). As explained by the trial court, this was a valid and believable prosecutorial reason to amend the information to charge petitioner with a second strike allegation once the facts for such allegation became known. This is not vindictive prosecution. *See United States v. Preciado-Gomez*, 529 F.2d 935, 941 (9th Cir. 1976) (addition of new counts in a superceding indictment referring to conduct occurring prior to first indictment which was previously unknown or unproved by competent evidence is not vindictive prosecution). Petitioner's claim of vindictive prosecution is unsupported in the record and should be denied.

C.   Ineffective Assistance of Counsel

A showing of ineffective assistance of counsel has two components. First it must be shown that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). After the acts or omissions that are alleged not to have been the result of reasonable professional judgment are identified, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice may be found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.; *see also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

### 1. Trial Counsel

Petitioner's claim regarding trial counsel's performance is somewhat confusing, however he appears to contend that counsel failed to move to exclude several items of evidence and also that counsel failed to object to the introduction of photographs of other items that were not entered into evidence.

Petitioner asserts that several items found in the home gave an appearance of being involved with some stage of the methamphetamine manufacturing process, but actually had no relevance because test results showed that they contained no controlled substances and no precursors. The items in question are those designated by law enforcement as "JW-4, JW-6, JW-8, JW-13, and JW-14," which were containers of various colored liquids. Petitioner appears to argue that any evidence of the existence of these items should have been excluded at trial because none of the liquids tested positive for controlled substances or their precursors.

Petitioner has failed to show that counsel's performance was deficient in failing to move to exclude the items designated JW-4, JW-6, JW-8, JW-13, and JW-14 at trial. It is undisputed that none of the liquids in question tested positive for any controlled substances or precursors. As petitioner points out, this was acknowledged by both parties at trial. The fact that these various containers of liquid did not contain methamphetamine or precursors does not mean that they held no evidentiary value. After all, they were recovered from among an array of other items that did contain precursors or other indicia of methamphetamine production, as explained by the prosecution's witnesses. (*See* subsection A, *supra*). There appears no reasonable

likelihood that a motion to exclude these items from evidence would have been granted. *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (counsel has no duty to make a futile motion). Petitioner has failed to show that counsel's performance was deficient in allegedly failing to move to exclude these items from evidence.

Petitioner further asserts that law enforcement officials failed to test various other household items which were collected from the home, and then destroyed those items, which he contends would have had exculpatory value if not destroyed. In particular, petitioner refers to the items designated by law enforcement as "JW-3, JW-10, JW-11, and JW-12," which included a can of acetone, a can of red devil lye and some tubing, Brake-Clean, and a container with black and white stains. (2RT at 38, 40.) While these items were not themselves admitted into evidence at trial, petitioner contends that counsel failed to object to the admission of photographs that showed these items in the home, next to other items which were tested and admitted into evidence.

Once again, petitioner has failed to show that counsel performed deficiently. He fails to explain what exculpatory value he believes these items held, and does not set forth any reason why they should have been preserved, what kind of testing could have been done, or what those test results would have been. In this regard, petitioner's claim is conclusory. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) (conclusory allegations that counsel provided ineffective assistance "fall far short of stating a valid constitutional violation" (*citing James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th cir. 1970) ("[a]llegations of fact, rather than conclusions, are required").

Again, these items were found among other items which did test positive for precursors or other indicia of methamphetamine production, and, as such, held significant evidentiary value. Petitioner has failed to show that counsel had a valid basis to object to photographs of the scene which showed these items among other items of evidence.

/////

Counsel's alleged failure to object to the evidence discussed herein did not fall below an objective standard of reasonableness. Moreover, there was ample other evidence of petitioner's guilt, and as such, there is no reasonable probability that, but for counsel's alleged blunders in this regard, the outcome of the case would have been any different. *Strickland*, 466 U.S. at 692-94.

### 3. Appellate Counsel

The *Strickland* standards apply also to appellate counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). An indigent defendant, however, "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Appellate counsel "must be allowed to decide what issues are to be pressed." *Id*. There is no obligation to raise meritless or weak arguments on a client's behalf. *Miller*, 882 F.2d at 1434; *see also Strickland*, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).

Petitioner claims that his state-appointed appellate counsel failed to raise on direct appeal the claims addressed in the preceding arguments. Instead, appellate counsel argued, with respect to this conviction, that (1) the total term imposed violated federal and state constitutional guarantees against cruel and unusual punishment, (2) the court's refusal to strike one or more strikes was an abuse of discretion, and (3) that the fines imposed for restitution and parole revocation were invalid.

The Supreme Court has recognized that "since time beyond memory" experienced advocates "have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). Petitioner does not address whether he believes the claims brought in the instant petition to be stronger than those that were actually raised by appellate counsel and

15

1 denied on direct review.  In any event, as set forth above, petitioner's claims in the pending
2 petition are clearly without merit and appellate counsel was not ineffective in failing to raise
3 them on direct appeal.

## VI.  CONCLUSION

For all the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 26, 2010.

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE